UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X   Case No.: 12-CV-1612
XIONG CHEN,

                                      *Plaintiff*,

        - against -

WEIQI ZHANG, SHUK PING LAI, BAI QIANG SU
And 128 MONTAGUE, INC., operating under the
Trade name "ANDY'S RESTAURAUNT",

                                      *Defendants.*
------------------------------------------------------------------X

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THE WITHIN MOTION FOR SUMMARY JUDGMENT

      Defendants WEIQI ZHANG, SHUK PING LAI, BAI QIANG SU and 128 Montague, Inc. (collectively known as "Defendants"), hereby submit the following memorandum of law in support of its cross-motion for summary judgment and in opposition to Plaintiff's motion for the same.

## STATEMENT OF FACTS

      Defendants Weiqi Zhang, Shuk Ping Lai, and Bai Qiang Su are all natural persons residing in the state of New York. Defendant 128 Montague, Inc. operating under the Trade name "Andy's Restaurant" is a corporation organized under the laws of the State of New York with its principle place of business being located in the County of Kings. Andy's Restaurant, as it names suggest, is engaged in the business of operating a retail dining establishment.

      Plaintiff Xiong Chen is a natural person who was formerly employed at Andy's Restaurant. Xiong Chen's complaint, a copy of which has been annexed hereto as **Exhibit A**, asserts that he worked at Andy's Restaurant from February 2008 through

November 2011. Mr. Chen has interposed claims against the above-named defendants seeking allegedly unpaid overtime wages. Defendant, in response, interposed an answer on or about May 23, 2012. A true and correct copy of that answer has been annexed hereto as **Exhibit B**. Subsequently, Defendants' counsel deposed Plaintiff on or about September 18, 2012. A true and correct copy of the transcript from said deposition appears annexed hereto as **Exhibit C**. The instant motion for summary judgment followed.

## LEGAL STANDARD

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. See e.g. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). It is incumbent upon the moving party to demonstrate the absence of a genuine issue of material fact. *Am. Int'l Group, Inc. v. London Am. Int'l Corp.*, 665 F.2d. 348, 351 (2nd Cir. 1981). The court is to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2 202 (1986). If, however, the opposing party fails to make a showing of an essential element of its case for which it bears the burden of proof, summary judgment will be granted. *Celotex*, 477 U.S. at 323. For the foregoing reasons, Defendants respectfully submit that a grant of summary judgment dismissing all of Plaintiff's claims is warranted in this matter.

**LEGAL ARGUMENTS**

**I. Plaintiff's Complaint Must Be Dismissed as Against Bai Qiang Su as he is Not A Proper Party to this Action**

To be liable under the FLSA, a defendant must be an "employer" within the meaning of the statute. 29 U.S.C. § 203(d). The same is true under relevant provisions of New York State law. N.Y. Lab. L. § 615(6). The central inquiry in determining whether one qualifies as an "employer" under both statutes is "whether the alleged employer possessed the power to control the workers in question…with an eye to the economic reality presented by the facts of each case." *Doo Nam Yang v. ACBL Corp.*, 427 F.Supp.2d 327, 342 (S.D.N.Y. 2005). In determining whether the requisite employee-employer relationship exists the court considers whether the alleged employer: (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records, though no single factor is dispositive." *Id*.

Here, Defendant Bai Qiang Su was not an employer of the Plaintiff under any definition. Bai Qiang Su, as evidenced from the stock certificates annexed hereto as **Exhibit D**, is not an owner of Andy's Restaurant. Instead, as Plaintiff himself testified, Mr. Su is the chef at the restaurant. See **Plaintiff's Deposition,** p. 35, ¶¶20-21. As set forth in the annexed declaration of Weiqi Zhang ("the Zhang Delcaration"), Mr. Su was responsible only for the management of the kitchen at Andy's Restaurant. Bai Qiang Su is not and was not in charge of hiring, firing, supervising, determining payment for or maintaining employment records of the wait staff at Andy's Restaurant. See **Zhang Declaration,**¶¶7-12. Given that Plaintiff was a waiter, and thus outside the purview of

3

Mr. Su's responsibility, the claims against Mr. Su must be dismissed for want of an employee-employer relationship with Plaintiff.

## II. Plaintiff has Failed to Demonstrate a Triable Issue of Fact as to the Existence of a Violation as to FLSA or New York State Law the Years 2008 and 2009

### A. Plaintiff Has Failed to Meet its Burden in Demonstrating that he Performed Any Work for Defendants Whatsoever for the Years 2008 and 2009

Under the FLSA and relevant New York State law, "an employee bringing an action for unpaid overtime compensation "has the burden of proving that he performed the work for which he was not properly compensated." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687, 66 S.Ct. 1187 (1946). Even where an employer lacks adequate records, the employee must still meet their burden by demonstrating that they actually performed the work for which he claims to have been improperly compensated.

Here, Plaintiff has not produced a single shred of documentary evidence tending to indicate that he worked for Andy's Restaurant in the years 2008 or 2009. Instead, Plaintiff has sought to rely solely on his deposition testimony in an effort to demonstrate that he actually was an employee during 2008 and 2009. See **Plaintiff's Deposition,** p. 10, ¶11. This testimony, however, flies in stark contrast to the documentary evidence produced by both Plaintiff himself and defendants.

Specifically, the Plaintiff produced Federal and State tax returns for the years 2008 and 2009. True and correct copies of these documents have been annexed hereto as **Exhibit E**. Both documents, of course, were devoid of any indication that Plaintiff worked at Andy's Restaurant in either of those calendar years. See **Ex. E**. Moreover, Defendant's own payroll records similarly indicate that he was not an employee of Andy's Restaurant in either 2008 or 2009. True and correct copies of these records

4

appear annexed hereto as **Exhibit F**. As such, Defendant respectfully submits that Plaintiff has failed to raise any genuine issue of triable fact with regards to his employment at Andy's during 2008 and 2009.

### B. Even if Plaintiff Was Employed During 2008 and 2009, His Own Testimony Demonstrates that He Was Compensated Adequately as a Matter of Law

Assuming *arguendo* that Plaintiff has met his burden in demonstrating that he actually performed work for Defendant in 2008 and 2009, his own testimony establishes that he was properly compensated in compliance with the law. The FLSA and applicable New York State Law requires, in relevant parts, that employers pay a premium overtime rate for any hours over 40 that an employee works in any given week. Here, Plaintiff's own testimony conclusively demonstrates that he was adequately compensated if he truly did work for Andy's Restaurant in 2008 and 2009.

Plaintiff's testimony, since he never actually worked for Andy's in 2008 or 2009, is the sole basis for which any calculation can be made as to amounts allegedly paid to him by Andy's Restaurant during said years. During his deposition, Plaintiff testified that he worked from Monday to Friday from 10:30 A.M to 10:15 P.M. See **Plaintiff's Deposition**, p. 33, ¶17. Plaintiff further indicated that he worked one half day on either Saturday or Sunday while taking the other weekend day off. See *Id*. As such, Plaintiff claims to have regularly worked a total of 60.5 hours per week in 2008 and 2009.

Assuming Plaintiff indeed worked those 60.5 hours, his testimony indicates that he was more than adequately compensated for said work. Plaintiff testified that he was paid a base salary of $150.00 per week. See **Plaintiff's Deposition**, p. 30, ¶4. Going past plaintiff's base salary, Plaintiff further testified that he received two daily tip distributions during each and every day that he worked at Andy's Restaurant. On weekday, Plaintiff

5

testified that he made between $40 and $50 per day for his first tip distribution. He also testified to receiving approximately $30 for the second distribution on days worked from Monday through Friday. See **Plaintiff's Deposition**, p. 53, ¶¶24-25. On the weekends, Plaintiff stated that he received around $30 for the first tip distribution and $65-$70 for the second distribution. See **Plaintiff's Deposition**, p. 54, ¶¶2-15.

Below is a breakdown of what Plaintiff claims to have actually received as measured against what he was required to receive under the law:

### LEGAL MINIMUM (2008 and 2009)

- Total Work Hours Per Week: 11 hrs./day * 5.5 days     = 60.5 hrs./wk
- Regular Pay: $7.25/hr. * 40 hrs.                       = $290.00
- Overtime Pay: $7.25/hr. * 1.5 * 20.5 OT hrs.           = $222.94
- **MINIMUM WEEKLY SALARY**                              = **$512.94**

### ACTUAL AMOUNTS RECEIVED BASED ON PLAINTIFF'S TESTIMONY

- Base Pay: $150/week                                    = $150.00
- Weekday Lunch Tip Average: $45/day * 5                 = $247.50
- Weekday Dinner Tip Average: $30/day * 5                = $150.00
- Weekend Lunch Tip Average: $30/day * 1                 = $30.00
- Weekend Dinner Tip Average: $63/day * 1                = $63.00
- **TOTAL WEEKLY SALARY RECEIVED**                       = **$640.50**

Plaintiff, by his own admission, made even more than what is required under the law in the event that he actually worked at Andy's Restaurant in 2008 and 2009. In fact, Plaintiff actually made some $127.00 more than the legal minimum. Thus, the Plaintiff finds itself in a position where the sole evidence it produced to prove its claim actually irrefutably rebuts those very same allegations. With this in mind, there can be no debate as to the existence of a triable issue of fact with regards to alleged underpayments in 2008 and 2009. Very simply, the Plaintiff was paid in excess of the minimum required as evidenced by very admissions he seeks to rely upon. Thus, Plaintiff has failed to meet its

6

burden of making out a prima facie case thereby necessitating the dismissal of any claims made for 2008 and 2009.

### III. Plaintiff has Failed to Demonstrate a Triable Issue of Fact as to the Existence of a Violation as to FLSA or New York State Law the Years 2010 and 2011

#### A. Plaintiff's Assertion that he Worked Eleven Hours Per Day in 2010 and 2011 are Incredible and Should Be Rejected as they Contradict the Record in this Case

Defendants, contrary to their position as to 2008 and 2009, do not dispute that Plaintiff was employed thereby in 2010 and 2011. With that said, however, Plaintiff's claims of being underpaid in those years are equally incredible and specious. In short, Plaintiff's assertion that he worked some eleven hours per day are entirely unbelievable and specifically controverted by the declarations annexed hereto.

Plaintiff, in addition to providing testimony regarding the hours he allegedly worked and wages received in 2008 and 2009, also provided certain statements with regards to the same topics for 2010 and 2011. Much of his testimony indicated that, for the most part, his employment in 2010 and 2011 was no different from the time he alleges to have spent with Andy's Restaurant in 2008 and 2009.. To begin, Plaintiff testified that he worked a total of 11 hours per day for six days each week in 2010 and 2011. See **Plaintiff's Deposition**, p. 49, ¶¶3-13.

The aforementioned assertions made by Plaintiff simply cannot be accepted as true. While a district court may not assess a witness' credibility at the summary judgment phase, the Second Circuit Court of Appeals has recognized that such assessments are appropriate where a plaintiff relies almost entirely on their own testimony. See *Jeffreys v. City of New York*, 426 F.3d 549, 551 (2nd Cir. 2005). In such a scenario, the court may dismiss the case if no reasonable jury would credit plaintiff's testimony as true. *Id*. Thus,

7

in *Jeffreys*, the Second Circuit affirmed a district court grant of summary judgment where the only evidence was plaintiff's testimony that was "so replete with inconsistencies and improbabilities' that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations" in the complaint. See *Id*.

Here, Plaintiff's testimony with regards to the total hours he worked in 2010 and 2011 qualify for rejection under the *Jeffreys* rationale. To begin, Plaintiff's testimony as to both the total hours and amount of days he worked is rebutted in the Zhang Declaration. See **Zhang Declaration**, ¶¶13-18. Moreover, the substance of said claims are entirely unbelievable. When asked about 2010 and 2011, Plaintiff indicated that he began working an additional half-day for a total of six days per week. See **Plaintiff's Deposition**, p. 49, ¶¶2-6. As noted previously, Plaintiff maintains that he worked from roughly 10:30 A.M. until 10:15 P.M. The annexed declarations of both Andy's owner Weiqi Zhang and a former waiter who worked with Plaintiff named Jie Guan, however, directly contradict this testimony.

Mr. Guan, whom the court should note no longer works at Andy's, stated that he was employed as a waiter working with Plaintiff in 2010 and 2011. See **Guan Declaration,** ¶3. As such, Plaintiff and Mr. Guan worked nearly identical schedules except that Mr. Guan did not work the one weekend day that Plaintiff was on the schedule for. See **Guan Declaration,** ¶¶3-6. Pursuant to their shared schedule, Plaintiff and Mr. Guan began work at 10:30 A.M. and finished their shifts at 8:30 P.M. See *Id*. The reason the shifts ended at that time, of course, is that there was simply no need for wait staff to be present past 8:30 P.M. as there were no dine-in customers at the restaurant. See *Id*. This account is further supported by the annexed declaration of owner

8

Waiqi Zhang. See **Zhang Declaration,** ¶¶13-17. Most importantly, however, this fact is entirely in concert with common sense and principals of logic. As such, the Plaintiff's contentions as to his shift lasting until 10:30 P.M. must be rejected.

Furthermore, Mr. Guan affirmatively stated that he and all waiters including Plaintiff were given no less than a total of two bona-fide meal breaks per day. Said breaks were, at the very least, forty-five (45) minutes in duration. See *Id*. at ¶9. Thus, Plaintiff and his cohorts were given at least one and a half hours (1.5) of bona-fide break time during the course of a day's shift. Again, this account is entirely supported by common experienced and logic. Clearly, workers are not expected to function without taking time to break for lunch and dinner. Past that, the notion that a restaurant would be busy with dine-in business without pause from lunchtime all the way until 10:30 P.M. is similarly implausible. Thus, Plaintiff's assertions to the effect that he worked without breaks must also be set to the side.

The sum and substance of the above leaves a picture in which Plaintiff did not work the absurd eleven (11) hours per day as he claims. Instead, he arrived at work at 10:30 A.M., departed at 8:30 P.M. and took no less than a total of one hour and a half (1.5) off for meal breaks. Plaintiff, as a result, worked no more than eight and one half (8.5) hours per daily shift. Any claims to the contrary fly in the face of the testimony of the disinterested non-party witness who worked a nearly identical schedule as Plaintiff, Mr. Jie Guan.

    **B. Plaintiff's Assertions as to the Amount of Tips he Received in 2010 and 2011 are Gross Misrepresentations that Must Also be Rejected**

Past his hours, Plaintiff was subsequently questioned with regards to the total amount of tips he received on a daily basis in 2010 and 2011. At first, Plaintiff stated that

he received "about the same" amount of tips in 2010 as he did in 2009. See **Plaintiff's Deposition**, p. 58, ¶¶7-16. Subsequently, Plaintiff then began claiming that he received roughly twelve dollars less per day in 2010 as compared to 2009. See **Plaintiff's Deposition**, p. 58, ¶¶20-25, p. 60,¶¶2-25. Plaintiff then went on to apply this blanket twelve-dollar daily decrease to all days worked in 2010 and 2011. See Id., **Plaintiff's Deposition**, p. 60, ¶¶11-19. Clearly, Plaintiff was anything but sure as to what exactly he was receiving for tips in 2010 and 2011. The reason Plaintiff was so unsure, however, is that he simply fabricating a story in a deliberate attempt to concoct a lawsuit for personal gain. His allegations do not, in any way, represent the truth of this matter.

Plaintiff's inconsistent testimony notwithstanding, his statements are in stark contradiction to the facts set forth in the Guan Declaration. The court should note that, in all years relevant to this action, the waiters at Andy's Restaurant engaged in a tip pooling arrangement. Pursuant to this arrangement, the waiters would pool all tips earned during the lunch and dinner shifts and then split them evenly based the number of waiters working for a given shift. See **Guan Declaration**, ¶¶11-14. Pursuant to this arrangement, each waiter received an average of $50-$60 each in 2010 for the lunch distribution on a given weekday. See Id. at ¶15. For the dinner distribution on a weekday, each waiter received an average of $100-$120. See Id. at 16. Plaintiff himself testified that he received weekend tips for lunch and dinner totaling $24 and $57 respectively. See **Plaintiff's Deposition**, p. 53,¶¶24-25, p. 54, ¶¶2-15, p. 58, ¶¶20-22, p. 59, ¶¶2-25, p. 60,¶¶2-19. With this in mind, the relevant calculations for Plaintiff's minimum wage claims for 2010 is as follows:

**LEGAL MINIMUM BASED ON FIVE-DAY WEEK (2010)**

- <u>Total Work Hours Per Week</u>: 8.5 hrs./day * 6 days    = 51 hrs./wk
- <u>Regular Pay</u>: $7.25/hr. * 40 hrs.    = $290.00
- <u>Overtime Pay</u>: $7.25/hr. * 1.5 * 11 OT hrs.    = $119.63
- **MINIMUM WEEKLY SALARY**    = **$409.63**

**ACTUAL AMOUNTS RECEIVED BASED ON FIVE-DAY WEEK (2010)**

- <u>Base Pay</u>: $150.00/week    = $150.00
- <u>Weekday Lunch Tip Average</u>: $55 * 5    = $275.00
- <u>Weekday Dinner Tip Average</u>: $110/day * 5    = $550.00
- <u>Weekend Lunch Tip Average</u>: $24/day * 1    =$24.00
- <u>Weekend Dinner Tip Average</u>: $57/day * 1    =$57.00
- **TOTAL WEEKLY SALARY RECEIVED**    = **$1,056.00**

As evidenced by the above table, Plaintiff was still more than adequately compensated for his work in 2010. In fact, he actually made more than $600 in excess of the legal minimum threshold. Thus, Plaintiff's claims for the year of 2010 must be dismissed as a matter of law.

Moving to 2011, both Plaintiff and Mr. Guan testified that the dine-in business at Andy's slowed somewhat during that year. Mr. Guan, however, refuted Plaintiff's testimony as to the severity of this decrease. In fact, Mr. Guan indicated that the average tips received by each waiter for the lunch service in 2011 decreased by $10 from the 2010 levels leaving a total of $40-$50 per shift. <u>See</u> **Guan Declaration**, ¶¶17. Mr. Guan further testified, however, that the tips received by each waiter for 2011 dinner service remained constant at the $100-$120 per waiter per shift. <u>See</u> <u>Id</u>. at ¶18. Thus, the relevant calculations for Plaintiff's claims in 2011 are as follows:

**LEGAL MINIMUM BASED ON FIVE-DAY WEEK (2011)**

- <u>Total Work Hours Per Week</u>: 8.5 hrs./day * 6 days    = 51 hrs./wk
- <u>Regular Pay</u>: $7.25/hr. * 40 hrs.    = $290.00
- <u>Overtime Pay</u>: $7.25/hr. * 1.5 * 11 OT hrs.    = $119.63
- **MINIMUM WEEKLY SALARY**    = **$409.63**

11

**ACTUAL AMOUNTS RECEIVED BASED ON FIVE-DAY WEEK (2011)**

- <u>Base Pay</u>: $150.00/week               = $150.00
- <u>Weekday Lunch Tip Average</u>: $45 * 5      = $225.00
- <u>Weekday Dinner Tip Average</u>: $110/day * 5  = $550.00
- <u>Weekend Lunch Tip Average</u>: $24/day * 1    =$24.00
- <u>Weekend Dinner Tip Average</u>: $57/day * 1   =<u>$57.00</u>
- **<u>TOTAL WEEKLY SALARY RECEIVED</u>**        = **$1,006.00**

As can be seen, in both 2010 and 2011, Plaintiff made amounts in far excess of the legal minimum wage required by FLSA and New York State Law. Thus, the claims he has brought against Defendants are utterly false and unsupported by the record herein. Given the foregoing, this entire action should be dismissed as no material question of fact remaining for trial exists. Plaintiff was, at all times he was employed at Andy's Restaurant, compensated in total concert with the law of both the United States of America and the State of New York. The Court should thus reject his feeble attempts to manufacture a frivolous lawsuit and enter judgment dismissing Plaintiff's complaint in its entirety.

**WHEREFORE** Defendants respectfully request that the within motion be granted in all aspects, that summary judgment dismissing Plaintiff's complaint in its entirety be entered, together with such other and further relief as is just and proper.

Dated: New York, New York
April 29, 2013

>                    Respectfully Submitted,
>
>                    _____/Russell Porter/_____
>                    Russell Porter (RP4945), Xie and Associates
>                    *Attorneys for Defendants*
>                    401 Broadway, Suite 1010
>                    New York, New York 10013
>                    Phone: (212) 226-0188
>                    Fax: (212) 226-0835